Pedro BILBAO, Appellant,

v.

Annette K. BILBAO n/k/a
Johnson, Appellee.

No. S–12546.

Supreme Court of Alaska.

April 17, 2009.

Robert C. Erwin, LLC, Anchorage, for
Appellant.

Peggy A. Roston, Law Office of Peggy A. Roston, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

In a divorce proceeding the trial court divided the marital property of the parties evenly, distributing half to each. Because at the time of divorce the husband possessed more of the marital assets than the wife, the court ordered him to make an equalizing payment of $202,962 to her. In calculating the amount of this equalizing payment, the court considered as marital property $50,500 that the husband had recently withdrawn from some certificates of deposit. The husband argues that the court erred in characterizing these funds as marital property because they originated in separate property such as pension payments and a workers' compensation award. The wife argues that the husband failed to meet his burden of proving that the certificates were separate property through tracing. Because the husband had the burden of tracing these assets and failed to do so, the trial court correctly found them to be marital property. Accordingly, we affirm.

## II. FACTS AND PROCEEDINGS

Pedro and Annette Bilbao married in 1982. At the time, Pedro worked as a diesel mechanic for Sealand, and he retired in 2002. Annette filed for divorce in November 2005. At the time of the divorce trial, Pedro was sixty-two years old, and Annette was fifty-three. The Bilbaos have two adult children.

The case was tried in July 2006. Superior Court Judge Sen K. Tan determined that the marital property should be divided equally, and the parties assented to this. After characterizing the separate and marital assets, the court tallied the total value of the marital assets at $1,553,063. Of this total, the court found Pedro to be in possession of $979,493 worth of marital assets, and found Annette to

hold $573,569. Therefore, Judge Tan ordered Pedro to make an equalizing payment of $202,962, to Annette. We will describe some particular assets further here because their characterization or disposition has been disputed.

### A. Local 302 Pension

Upon Pedro's retirement from Sealand, he began receiving a $3,722 monthly pension from the Operating Engineers Union Local 302 (Local 302 pension). The court heard expert testimony and valued the marital portion of it at $104,905. The parties agreed that Pedro should continue to receive the full monthly pension payment, and increase the equalizing payment to Annette to reflect her share of the present value of the portion of the entire pension that was marital property.

### B. Workers' Compensation Payments

In 2002 Pedro received a workers' compensation award of $26,550 for shoulder injuries. He also testified that he received an additional $8,000 in workers' compensation for a knee injury, but provided no documentation of this. He stated that his workers' compensation payments were deposited into his account at Denali Alaskan Federal Credit Union.

### C. Denali Alaskan Federal Credit Union Accounts

Pedro had an account in his name at the Denali Alaskan Federal Credit Union. There were several sub-accounts. He had a savings account at the credit union with an account number of S1 containing $8,121 as of December 1, 2005, and a money market savings account numbered S10 containing $1,086 as of that date. He had certificates of deposit numbered I5 and I5.1, that he purchased in October 2005 for $20,000 and $4,500, respectively. He also had certificates of deposit numbered I5.2 and I5.3 that he purchased in November 2005 for $5,500 and $20,500, respectively.

Pedro cashed out these certificates of deposit on December 2, 2005, for $50,500. Pedro testified that he cashed out this sum to protect from Annette his non-marital assets,

namely his workers' compensation money and proceeds from his Local 302 pension. Pedro claimed that he used these funds to pay taxes of $26,000 and to pay marital expenses, and transferred the rest of the money to accounts earning higher interest rates.

Judge Tan concluded that the Denali credit union account was marital property, because marital funds were deposited into the account, including Pedro's wages, and a pension from the Alaska Teamsters' Employer Pension Trust that Pedro conceded to be marital property. The court rejected Pedro's contention that the $50,500 from the certificates was his separate property. The court held that a party seeking to establish a bank account as separate property bears the burden of proof to trace the source of the asset, and that Pedro failed to meet this burden because he presented no tracing of assets. The trial court also described Pedro's account of what he did with the various funds he withdrew from bank accounts after the separation as "very suspect," and said Pedro was "hiding money." The court added the $50,500 from the certificates to its calculation of the marital property then in Pedro's possession, and in turn factored that into the calculation of the equalization payment of $202,962 that Pedro was ordered to pay Annette.

## III. STANDARD OF REVIEW

■ A trial court's characterization of property as separate or marital may involve disputed facts and questions of law. We review findings of fact under the clearly erroneous standard, and we review questions of law *de novo* using our independent judgment.[1]

## IV. DISCUSSION

■ Pedro listed four issues in his appeal: (1) the trial court's holding that Annette was entitled to an equalization payment of $202,962; (2) the court's holding Pedro in contempt of court without a hearing; (3) the court's determination of the value of the Local 302 pension; and (4) the court's treat-

ment of the Denali Alaskan Federal Credit Union account in distributing the marital estate. However, Pedro did not provide any briefing on the second and third of these issues in his brief or reply brief. Therefore we consider those issues abandoned.[2]

This leaves the first and fourth issues listed by Pedro's appeal. These really constitute only one issue: whether the court erred in characterizing the $50,500 worth of credit union certificates of deposit that Pedro cashed in as marital property. Pedro contends that because these certificates were his separate property, the court erred in calculating the $202,962 equalization payment. We conclude that the court did not err and properly considered the $50,500 to be marital property.

### A. The Trial Court Did Not Err in Holding that Pedro Bore the Burden of Tracing the Assets in the Denali Alaskan Federal Credit Union Accounts To Show that They Were Separate Property.

■ Pedro argues that monies he withdrew from the credit union account were separate property because the account was in his name alone and because he deposited separate property funds into the account. He denies that he bears the burden of proving through tracing that the assets in question are separate property, stating that "it is only when the account's source cannot be proven, and it is impossible to determine whether it is marital or separate, then a party seeking to establish the property as separate bears the burden of proof or the untraceable asset is marital property." Pedro is mistaken: The superior court properly found that he bore the burden of showing that these assets were separate property.

■ Separate property includes property acquired by one spouse before marriage, property acquired by gift, and property ac-

---

**1.** See *Schmitz v. Schmitz*, 88 P.3d 1116, 1122 (Alaska 2004).

**2.** See *Kodiak Elec. Ass'n v. DeLaval Turbine*, 694 P.2d 150, 153 n. 4 (Alaska 1984); *Vezey v. State*, 798 P.2d 327, 336 (Alaska 1990).

quired by inheritance.[3] Assets acquired during marriage such as the salary of a spouse are considered primary marital assets.[4] Assets such as bank accounts whose characterization depends on the classification of other assets are known as secondary assets.[5]

■ To classify a secondary asset, a trial court must first identify and then classify the source asset from which it was derived.[6] This process is referred to as tracing.[7]

> When the source asset is primary marital property, the secondary asset is secondary marital property. Likewise, when the source asset is primary separate property, the secondary asset is secondary separate property. However, if the source asset itself is secondary property, tracing continues until either a primary separate or primary marital source asset is found.[8]

A secondary asset such as a bank account derived from both marital and separate property sources is sometimes called a "mixed secondary asset."[9] We have noted that "[t]o characterize a mixed secondary asset, the superior court must know the character of each source feeding into the mixed asset and the amount of value each source contributed to the mixed whole."[10] The trial court can then determine the ratio between the sources, and divide the mixed secondary asset into marital and separate property according to that ratio.[11]

■ The party seeking to establish that a secondary asset is separate property "always bears [the] burden of proof; thus untraceable assets are marital property."[12] Thus, "even when it is known that a mixed secondary asset derived partly from a sepa-

rate source, if the amount contributed from that source cannot be determined, then the asset cannot be traced and '[t]he unknown amount contributed from the separate source transmutes by commingling and becomes marital property.' "[13]

Having testified that the funds originated in separate property, Pedro denies that he bears the burden of proving through tracing that the property in question was separate property, and points out that Annette did not prove that these funds were "transmuted into martial property." He cites *Abood v. Abood*,[14] in which we held that mere commingling of separate property with marital property does not automatically lead to a finding of transmutation into marital property.[15] However, *Abood* followed this court's holding in *Schmitz v. Schmitz*[16] that a *presumption* of transmutation nevertheless arises when a party commingles separate and marital funds.[17] Pedro misstates the *Schmitz* holding when he asserts that "[i]t is only when the account's source cannot be proven, and it is impossible to determine whether it is marital or separate, then a party seeking to establish the property as separate bears the burden of proof or the untraceable asset is marital property." In fact, *Schmitz* makes clear that the party seeking to establish that a secondary asset is separate property "*always* bears [the] burden of proof; thus untraceable assets are marital property."[18] The trial court thus did not err in assigning to Pedro the burden of proving through tracing that the $50,500 had its source in separate property.

3. *Schmitz*, 88 P.3d at 1127.

4. *Id.*

5. *Id.* at 1127–28.

6. *Id.* at 1127.

7. *Id.*

8. *Id.* at 1128.

9. *Id.* (citing BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 5.23, at 266 (2d ed.1994)).

10. *Id.*

11. *Id.*

12. *Id.*

13. *Id.* at 1128–29 (quoting TURNER, *supra* note 9, § 5.23, at 268).

14. 119 P.3d 980 (Alaska 2005).

15. *Id.* at 984.

16. 88 P.3d 1116, 1122 (Alaska 2004).

17. *Abood*, 119 P.3d at 985.

18. *Schmitz*, 88 P.3d at 1128 (emphasis added).

## B. The Trial Court Did Not Err in Concluding that the Funds Pedro Withdrew from the Denali Alaskan Federal Credit Union Accounts Were Marital Property.

 Pedro argues that he in fact did prove the disputed funds originated in separate property sources. He asserts "the trial court simply ignored the source of the funds[:] retirement, social security and worker's compensation." However, the record shows that Pedro did not attempt to trace these funds. Furthermore, such tracing would not have been possible using solely the evidence in the record.

It is true that Pedro did provide evidence that he deposited separate property monies into an account at the credit union. Bank records show a monthly $3,722 deposit of his Local 302 pension payment into the savings account numbered S1, beginning in February 2003. As already noted, the trial court characterized most of the Local 302 pension as Pedro's separate property. Pedro also claims that separate property from workers' compensation and social security went into the Denali Alaskan Federal Credit Union. Pedro documented a 2002 workers' compensation award for $26,550, and testified that he deposited it at the credit union. However, the record only contains statements from the credit union dating back to the start of 2003, so the record does not indicate into which of his accounts he might have put the workers' compensation payment. As for social security, the Denali credit union statements provided in the record, which cover January 2003 through June 2006, show no social security deposits before the date that Pedro cashed out the disputed certificates of deposit. The first time a social security deposit into his Denali credit union account shows up in the record is in March 2006.

Although separate property assets apparently went into the S1 account, those deposits were commingled in that account with marital property such as the deposits from the Alaska Teamster's Pension Trust. Therefore if tracing had been attempted, this S1 account would have been characterized as a mixed secondary asset. Pedro might have (but did not) attempt to trace his separate property deposits and claim a proportionate share of this S1 savings account as separate property. The court valued this savings account at $8,121.

Even if Pedro had been able to trace the sources of the S1 account, the issue in this appeal is the $50,500 from certificates of deposit at the same credit union. But there is no link in the evidence (or in Pedro's briefing) between the purchase of these certificates and the S1 account, and therefore no link between the certificates and Pedro's alleged separate property from the Local 302 pension.

The testimony and account statements from the credit union in the record are not sufficient to make this link. On the dates Pedro purchased these certificates, October 15, 19, and 29, and November 1 and 3, there were no corresponding withdrawals or transfers out of the S1 account. The source of the funds used to purchase the certificates cannot be deduced from the bank statements, and Pedro's testimony provides no additional information that would help on this question. Pedro's briefing does not even suggest how this link would be established. In addition, Pedro at many times withdrew funds from his credit union savings accounts, and the trial court did not credit Pedro's testimony regarding how he used the funds he withdrew, calling his testimony "very suspect."

## V. CONCLUSION

Because Pedro did not meet his burden of proof through tracing that the certificates of deposit he cashed out were separate property, we AFFIRM the trial court's determination that these secondary assets were marital property and the court's order that Pedro should pay Annette an equalizing payment of $202,962.