*Notice:  This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CHRISTOPHER JINSOO CHUNG, | ) | |
| | ) | Supreme Court No. S-15374 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-09-09549 CI |
| v. | ) | |
| | ) | O P I N I O N |
| RORA PARK, LAKEVIEW LLC, | ) | |
| and GLACIER MASONRY & | ) | No. 6973 – December 12, 2014 |
| EXCAVATING, INC., | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay, Judge.

Appearances: Susan Orlansky, Susan Orlansky LLC, Anchorage, for Appellant.  Ronald A. Offret, Aglietti, Offret & Woofter, Anchorage, for Appellees Rora Park and Lakeview LLC.  Notice of non-participation filed by Steven D. Smith, Law Offices of Steven D. Smith, Anchorage, for Appellee Glacier Masonry & Excavating, Inc.

Before:  Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

BOLGER, Justice.

## I.    INTRODUCTION

A landowner sued her neighbor for trespass, alleging that the neighbor cleared trees from the landowner's property without permission.  The superior court found that the tree cutting did not diminish the property value and that there was no reason personal to the landowner for restoring the trees.  But the superior court awarded damages equal to the cost of restoring 50 trees on the property.

Ordinarily, a landowner damaged by a trespass may recover either the loss in property value or reasonable restoration costs.  But restoration costs are inappropriate if they are disproportionate to the loss in property value, unless there is a reason personal to the landowner for restoring the land.  We thus conclude that we must vacate this award.

## II.    FACTS AND PROCEEDINGS

In August or September 2007, Rora Park began leasing a unit (Unit 13) on her property to Christopher Chung.  Chung agreed to make some improvements to Unit 13 and a chapel on the property, and Park agreed to offset the rent according to the value of Chung's work.[1]  Soon thereafter, Park sold an adjacent lot (Lot 3) to Chung, on which Chung intended to build a house.

Chung hired Glacier Masonry and Excavation, Inc. (Glacier) to build the foundation of the new house on Lot 3 in August 2008.  As part of that project, Glacier agreed to clear trees and other vegetation from the lot.  While Glacier was removing trees from Lot 3, one of its employees, a man named Tracy, was discovered clearing vegetation in the power line easement between Lot 3 and Park's adjacent lot.  One witness suggested

---

[1]    The parties disagreed at trial about the actual terms of the lease agreement. Park testified that Chung agreed to pay $2,000 per month, with the understanding that the rent would be offset by the value of any improvements Chung completed.  Chung testified that he agreed to make certain improvements and correct building code deficiencies in lieu of paying any rent at all.  The actual terms of the parties' lease agreement, however, are not relevant to the issues presented by this appeal.

Tracy may have gone "four or five [f]eet" beyond the boundary of Lot 3. Because Glacier did not have a permit to work in the easement and there was a significant fine for working in the easement without a permit, Glacier's owner immediately told Tracy to leave the easement and work elsewhere. Glacier's owner testified that Tracy "said that he was clearing out there to get a view, and that he'd been paid by Christopher Chung." The owner testified that "eight or so" trees were removed from the power line easement; another Glacier employee put the number at "three to six."[2]

Aerial photographs presented by the parties indicate that some trees were removed from Park's property near the border of Lot 3 between August 2008 and September 27, 2008, and more trees were removed between 2008 and 2009. The trees appear to have been removed more or less directly behind the house built on Chung's property. Timber debris, presumably from the cleared trees, was also discovered buried on Park's property.

An expert witness hired by Park estimated that 562 trees were cleared from about a third of an acre of Park's property. He calculated that it would cost over $400,000 to restore the property to its former condition. But Chung's expert witness testified that the market value of Park's property was likely not affected by the removal of trees.

Apart from the testimony described above, there was no direct evidence of who was responsible for removing the trees from Park's property. Park testified that she saw workers on her property and that Chung told her that the workers cut the trees. But

---

[2]        Chung argues that the superior court erroneously found that "Tracy was later 'seen clearing the property.' " Chung appears to believe the court found that Tracy was seen working on Park's property at some point after the power line easement incident. But, read in context, the court's statement that "later . . . Tracy was seen clearing the property" appears to refer to testimony about Tracy's activity in the power line easement.

Park did not personally see anyone remove trees from her property. Although she suggested that Chung may have cleared the trees so that he could see a nearby lake from his house, Chung denied that his house had any view of the lake even after the trees were cleared. Nevertheless, he offered no alternative explanation for the trees' disappearance.

In August 2009 Park evicted Chung from Unit 13. She then filed a complaint in the Anchorage Superior Court, claiming that Chung trespassed on her property and cut down trees without permission.[3] Park sought to recover the cost of restoring the trees and punitive damages. Chung, in his answer, admitted that a contractor removed "a few trees" from Park's property but asserted that the removal was done without his permission.

After a bench trial in August 2013, the superior court found Chung liable for the trees removed from Park's property before September 27, 2008. The court determined there was insufficient evidence to find Chung liable for tree removal occurring after that date or for the burial of timber debris on the property. Although the court acknowledged that Park had not proved that the tree cutting reduced the value of her property and found that Park had no reason personal for replacing the trees, it nevertheless concluded that "it would be reasonable both aesthetically and legally to award damages that would permit replacement of trees on that first portion of the lot that can be clearly shown to have been scraped clean as of September 27th, 2008." The court therefore awarded Park the cost of replacing 50 trees, $23,500. Because the court found that Chung's trespass was not unintentional or involuntary, it awarded treble damages under AS 09.45.730.

Chung appeals.

---

[3]    Because Chung has only appealed the superior court's judgment concerning Park's trespass claim, we do not address Park's claim for unpaid rent or Chung's third-party claim against Glacier.

## III.    STANDARD OF REVIEW

We review the superior court's factual findings for clear error.[4] Clear error "occurs when a review of the entire record leaves us with a definite and firm conviction that a mistake has been made."[5] "Whether the superior court applied the correct legal standard is a question of law that we review de novo . . . ."[6]

## IV.    DISCUSSION

Chung argues that it was error to award Park damages equal to the cost of replacing the trees that were removed from her property. He argues that, because the superior court found that Park did not have a "reason personal for restoring the land," the court should have awarded damages equal to the diminution of property value caused by the removal of the trees. Park responds that awarding only damages for lost property value in this case would be contrary to the purpose of AS 09.45.730, which allows a landowner to recover punitive damages against an intentional trespasser.

"[A] party who is injured by an invasion of his property not totally destroying its value may choose as damages either the loss in value or reasonable restoration costs."[7] But "reasonable restoration costs are an inappropriate measure of damages when those costs are disproportionately larger than the diminution in the value

---

**4**    *Offshore Sys.-Kenai v. State, Dep't of Transp. & Pub. Facilities*, 282 P.3d 348, 354 (Alaska 2012).

**5**    *Id.*

**6**    *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011).

**7**    *Wiersum v. Harder*, 316 P.3d 557, 567 (Alaska 2013) (per curiam) (internal quotation marks omitted) (citing *Osborne v. Hurst*, 947 P.2d 1356, 1358 (Alaska 1997)). This court has also held that the landowner may recover "the economic value of the timber cut," *Andersen v. Edwards*, 625 P.2d 282, 289 (Alaska 1981), but no party has alleged that Park's trees had any appreciable economic value.

of the land and there is no reason personal to the owner for restoring the land to its original condition."[8]  A reason personal is one that is "peculiar or special to the owner."[9]  "We require the landowner to demonstrate a reason personal because we believe it indicates circumstances where the owner holds property primarily for use rather than for sale and where the owner is likely to make repairs with the restoration costs award rather than to pocket the funds and enjoy a windfall."[10]  For example, in *Osborne v. Hurst*, we held that there was sufficient evidence to find that two landowners had a reason personal for replacing trees that were destroyed by a fire on their property after the landowners testified that they "had selected the property because of its unique views, its abundant trees, and the unusual juxtaposition of the trees, the cabin, and the views" and that "other properties in the area were not comparable."[11]

During trial in this case, Park attempted to establish a reason personal for replacing the trees that Chung had allegedly removed.  When asked about how she felt when she discovered the trees had been removed, she testified:

> I have a previous history of cancer, and this natural beauty of my yard is [a] healing spot for me, and . . . in the future I'm going to [live] here, after [Chung] move[s] . . . .  [A]fter work I come by, see my property and see the natural beauty and the trees and all that[.  W]hen I [saw] that all cut out it just [made] me very — [it] just [broke] my heart, and then very angry

---

[8]     *Osborne*, 947 P.2d at 1359 (emphasis omitted) (internal quotation marks omitted) (citing RESTATEMENT (SECOND) OF TORTS § 929 cmt. b (1977)).

[9]     *Wiersum*, 316 P.3d at 568.

[10]    *Id.* (quoting *Osborne*, 947 P.2d at 1359) (internal quotation marks omitted).

[11]    947 P.2d at 1360.

. . . . I don't know how [I can] explain . . . , it's just my healing natural stop. [It] is just healing my health and [helping] me for day-by-day living, and then when I saw that it just really hurt my feeling[s] . . . .

But the superior court did not credit this testimony, because Park downplayed her visits to the property later in the trial. As a result, the court found that Park had not established a reason personal for restoring her property. Nevertheless, the court concluded that "it would be reasonable both aesthetically and legally to award damages that would permit replacement of trees" and awarded damages accordingly.

According to the unrebutted testimony of Chung's expert witness, the removal of trees from Park's property did not appreciably affect the value of her property. The court accepted that testimony in its findings of fact. Therefore, the damages the court awarded — $23,500 before trebling — were clearly disproportionate to the diminution of the property value.

The superior court could award restoration damages only if it found that Park had a reason personal for restoring her property.[12] But the court expressly found that Park did not prove a reason personal, and Park has not challenged that finding on appeal. Therefore, awarding compensatory damages that exceeded the diminution in the market value of Park's property was not appropriate.

Park appears to argue that awarding only damages for lost property value would be contrary to AS 09.45.730, which provides that an intentional trespasser is "liable . . . for treble the amount of damages that may be assessed in a civil action." Here,

---

[12] *Wiersum*, 316 P.3d at 567-68 ("[D]amages are measured only by the difference between the value of the land before and after the harm if the 'cost of replacing the land in its original condition is disproportionate to the diminution in the value of the land caused by the trespass, unless there is a *reason personal* to the owner for restoring the original condition.' " (emphasis in original) (quoting RESTATEMENT (SECOND) OF TORTS § 929 cmt. b (1977))).

"the amount of damages that may be assessed in a civil action," as determined by our case law, is the diminution in the market value of Park's property. Nothing in AS 09.45.730 provides a basis for awarding restoration damages when such damages would not otherwise be appropriate.[13]

## V. CONCLUSION

We VACATE the portion of the judgment awarding trespass damages and REMAND for recalculation of prejudgment interest and attorney's fees. The superior court may enter an award of nominal damages based on its finding of an intentional trespass.[14]

---

[13] Chung also challenges the superior court's findings about the number and composition of the removed trees. The court used these findings to determine the restoration damages. Because we conclude that Park is not entitled to restoration damages, we do not need to reach these issues.

[14] *See Brown Jug, Inc. v. Int'l Bhd. of Teamsters, Local 959*, 688 P.2d 932, 938 (Alaska 1984).