*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JOHN L. PHILLIPS, | ) |
| | ) Supreme Court Nos. S-17202/17221 |
| Appellant and Cross-Appellee, | ) |
| | ) Superior Court No. 3AN-15-07027 CI |
| v. | ) |
| | ) O P I N I O N |
| BARBARA S. BREMNER-PHILLIPS, | ) |
| n/k/a BARBARA S. STANLEY, | ) No. 7495 – December 18, 2020 |
| | ) |
| Appellee and Cross-Appellant. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Steven J. Priddle, Law Office of Steven J. Priddle, Anchorage, for Appellant and Cross-Appellee. Robin A. Taylor, Law Office of Robin Taylor, Anchorage, for Appellee and Cross-Appellant.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices. [Stowers, Justice, not participating.]

MAASSEN, Justice.

## I.     INTRODUCTION

A divorcing couple had a community property trust holding title to two rental properties — a fourplex and a mobile home park — that the husband had owned before marriage. Following trial the superior court divided the marital estate equally, awarding the rental properties to the husband and a large equalization payment to the

wife. Both parties appeal. The husband argues that the superior court erred when it found that a bank account in the names of the husband and the mobile home park was marital. The wife argues that the court erred in its interpretation of the Alaska Community Property Act when it held that income and appreciation from the rental properties in the community property trust remained the husband's separate property; she also argues that the court clearly erred in some findings of fact and abused its discretion when it failed to invade the husband's separate property in order to reach an equitable division.

We conclude that the superior court did not err in its interpretation of the relevant statutes, did not clearly err in its findings of fact, and did not abuse its discretion when dividing the marital estate. We therefore affirm the superior court's judgment.

## II. FACTS AND PROCEEDINGS

### A. Facts

John Phillips and Barbara Stanley met in 1981. For the first few months of their relationship they lived together in John's unit of a fourplex he had built in 1976. After about a year, John provided Barbara with a mobile home in the Chateau Mobile Home Park, which he also owned; she lived in the mobile home for several years before moving into a separate unit in John's fourplex. For the duration of their relationship, Barbara and John maintained their own living quarters but, as the superior court found, "freely went back and forth between the two units" in the fourplex, living "as husband and wife." They were legally married in 1991.

In August 2007 John and Barbara created a community property trust — the Phillips Revocable Trust — pursuant to the Alaska Community Property Act, AS 34.77. John testified at trial that their purpose was to facilitate the transfer of his properties to Barbara after he died. The trust document named John and Barbara as co-settlors and co-trustees. There were initially three properties transferred to the trust: the fourplex

and the mobile home park, both owned by John, and a lot in Wasilla, which John bought in his own name in 1993, two years after he and Barbara were married. A fourth property was added in 2014, when John purchased a home on Campbell Airstrip Road. None of the properties were designated as separate property, and thus, by the trust document's express terms, all of them became community property once placed in the trust.[1]

## B. Proceedings

The parties separated in May 2015, and John filed for divorce. John was in his late 80s and Barbara in her late 70s. John had significant health problems: he had dealt with lung cancer twice, resulting in the loss of half of each lung, and had recently undergone heart surgery following a heart attack. His only form of health insurance was Medicare, and he received around $28,000 in annual income, excluding rental income from his properties. Barbara had medical issues of her own, though the court ultimately found her to be "in reasonably good health"; she received roughly $47,000 a year in teacher retirement income.

The court held a multi-day divorce trial that spanned several years.[2] Although the parties "possess[ed] voluminous personal property," their disputes centered on the real property and its income. During the course of the litigation the parties agreed

---

[1] Paragraph 1.3 of the trust document provides that "[a]ll property transferred to the Trustee and the proceeds thereof shall be known as the community property of the Settlors after its transfer in accordance with A.S. 34.75 et. seq., [sic] except to the extent the property transferred to the trust is designated by the Settlor as his/her separate property."

[2] Trial was initially completed in late 2016. The court then ruled on John's post-trial motion regarding the proper treatment of appreciation and income from the trust property; the ruling required that the court "reopen the trial in order to receive additional evidence concerning the value of the property placed in the trust when it was initially declared community property." Trial concluded in April 2018.

to sell the Wasilla lot and John sold the Campbell Airstrip home; the proceeds of both sales were placed in the court registry pending the court's division of the marital estate.

Following trial the court found, as relevant here, that the fourplex, the mobile home park, and the proceeds from the sales of the Wasilla lot and Campbell Airstrip home were community property. But relying on AS 34.77.030(h),[3] the court found that the rental income from those marital assets remained John's separate property.

The court also discussed the parties' bank accounts, only one of which — with First National Bank Alaska (FNBA) — is at issue on appeal. The owners of the account are identified as John and the mobile home park, with Barbara and the parties' bookkeeper listed as authorized signers. The superior court found that although the rental income would otherwise have remained John's separate property, "[b]y placing the account under joint ownership with [the mobile home park], which is community property, John, in effect, designated the account community property."

Finally, the court decided that a 50/50 division of the marital estate would be "just, fair and equitable." Rather than splitting the two rental properties, the court awarded both the fourplex and the mobile home park to John in consideration of his advanced age, the length of time he had lived there, and the awkwardness of requiring the couple to remain neighbors. The court ordered John to make an equalization payment to Barbara of approximately $387,000, reasoning that this — along with her share of the parties' various liquid assets — would give Barbara enough cash to purchase her own income-producing property should she choose to do so.

Both John and Barbara appealed.

---

[3] The statute provides: "Appreciation and income of property transferred to a community property trust is community property if declared in the trust to be community property."

## III. STANDARD OF REVIEW

"Equitable division of marital property involves three steps: determining what property is available for distribution, valuing the property, and allocating the property equitably."[4] "The first step, characterizing property as marital or non-marital, involves mixed questions of law and fact; 'we review the superior court's legal conclusions de novo and its factual findings for clear error.' "[5] When reviewing questions of law de novo, "[w]e interpret statutes 'according to reason, practicality, and common sense, taking into account the plain meaning and purpose of the law as well as the intent of the drafters.' "[6] When reviewing questions of fact, we find clear error only "when we are 'left with a definite and firm conviction that the superior court has made a mistake.' "[7]

The second step in property division, "factual determination of property value, is also reviewed for clear error."[8] "The third step, equitable property distribution, is reviewed for abuse of discretion[,] and 'we will not disturb the result unless it is clearly unjust.' "[9]

---

[4] *Schmitz v. Schmitz*, 88 P.3d 1116, 1122 (Alaska 2004) (citations omitted).

[5] *Wiegers v. Richards-Wiegers*, 420 P.3d 1180, 1182 (Alaska 2018).

[6] *Dapo v. State*, 454 P.3d 171, 175 (Alaska 2019) (quoting *Marathon Oil Co. v. State, Dep't of Nat. Res.*, 254 P.3d 1078, 1082 (Alaska 2011)).

[7] *Ethelbah v. Walker*, 225 P.3d 1082, 1086 (Alaska 2009) (quoting *Josephine B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 174 P.3d 217, 220 (Alaska 2007)).

[8] *Wiegers*, 420 P.3d at 1182.

[9] *Id.* (quoting *Cartee v. Cartee*, 239 P.3d 707, 712 (Alaska 2010)).

## IV.   DISCUSSION

In the sections that follow, we first address Barbara's argument that the superior court erred when it determined that the income from the rental properties in the Phillips Revocable Trust remained John's separate property. We next address John's contention that the court erred in deciding that his separate rental income became marital when he placed it in a jointly held account. Finally, we address Barbara's argument that the court's 50/50 division of the marital estate was inequitable and relies on several errors of fact. In each instance we affirm the superior court's decision.

A.   **The Superior Court Correctly Applied AS 34.77.030(h) In Concluding That Income From The Community Trust Properties Was Not Community Property.**

Barbara argues that the superior court misinterpreted the Community Property Act[10] when it found that appreciation and income from the community trust properties were not also community property. We reject her argument as contrary to the plain statutory language.

A community property trust is defined in AS 34.77.100(a) as "an arrangement [in which] one or both spouses transfer property to a trust, the trust expressly declares . . . the property transferred is community property under this chapter, and at least one trustee is a qualified person."[11]   Either spouse's property, when transferred to a community trust, becomes community property to the extent provided by the parties' trust agreement, "[e]xcept for property that is classified otherwise in this chapter."[12]   The treatment of the proceeds of trust property is addressed specifically in

---

[10]   AS 34.77.010-.900.

[11]   AS 34.77.100(a).

[12]   AS 34.77.030(a).

AS 34.77.030(h): "Appreciation and income of property transferred to a community property trust is community property *if declared in the trust to be community property*."[13]

Neither John nor Barbara disputes the validity of their community trust agreement, nor does Barbara contend that the agreement declares "[a]ppreciation and income of property transferred to" the trust to "be community property." Rather, she argues that the superior court misinterpreted AS 34.77.030(h) when it held that the income and appreciation of real property in the trust will not be treated as community property unless the parties specifically say so in their agreement.

"Statutory interpretation in Alaska begins with the plain meaning of the statute's text."[14] And under our "sliding scale approach to statutory interpretation, . . . 'the plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be.' "[15] Thus, "[w]here a statute's meaning appears clear and unambiguous, . . . the party asserting a different meaning bears a correspondingly heavy burden of demonstrating contrary legislative intent."[16]

Barbara's primary contention is that the phrase "if declared in the trust" in subsection .030(h) should be interpreted as modifying "community property" rather than "appreciation and income"; by her reading of the statute, if the "property transferred to a community trust" is "declared to be community property," then the appreciation and income of that property are community property as well. She contends that this reading

---

[13]     AS 34.77.030(h) (emphasis added).

[14]     *Angelica C. v. Jonathan C.*, 459 P.3d 1148, 1156 (Alaska 2020) (quoting *Ward v. State*, *Dep't of Pub. Safety*, 288 P.3d 94, 98 (Alaska 2012)).

[15]     *State v. Fyfe*, 370 P.3d 1092, 1095 (Alaska 2016) (quoting *Adamson v. Municipality of Anchorage*, 333 P.3d 5, 11 (Alaska 2014)).

[16]     *Id.*

is required by the Community Property Act's purpose to allow a surviving spouse to take advantage of the "step-up" in the tax basis of community property, an advantage that will be lost if the appreciation does not remain part of the community property. But we reject this argument as contrary to the statute's plain language. When the sentence is read naturally, the phrase "of property transferred to a community property trust" is simply a descriptive prepositional phrase modifying the sentence's subject, "appreciation and income." If the prepositional phrase is omitted for clarity's sake, the sentence remains straightforward and coherent: "Appreciation and income . . . is community property if declared in the trust to be community property."[17] To adopt Barbara's reading, on the other hand, would require that we not just parse the language but actually rewrite it: "Appreciation and income of property transferred to a community property trust is community property if *the property transferred to the trust is* declared in the trust to be community property." It is not our place to rewrite the statute even if we were convinced that Barbara's reading is the one the legislature intended.[18]

Because the meaning of subsection .030(h) "appears clear and unambiguous," Barbara "bears a correspondingly heavy burden of demonstrating

_____

[17] We recognize the subject-verb disagreement; the compound subject "[a]ppreciation and income" is followed by the singular verb "is." Ordinarily, of course, a singular verb follows a singular subject. *See* BRYAN A. GARNER, THE REDBOOK: A MANUAL OF LEGAL STYLE § 11.23 at 215 (4th ed. 2018). It is not clear whether the subject-verb disagreement in subsection .030(h) is a drafting error or an intentional treatment of "[a]ppreciation and income" as a singular unit. *See id.* at 216 ("When a compound subject is singular in meaning it will take a singular verb," e.g., "Black tie and tails is the designated attire."). Either way, we cannot strain the natural reading of subsection .030(h) to connect the verb "is" to anything other than the sentence's obvious subject, "[a]ppreciation and income."

[18] *State, Div. of Workers' Comp. v. Titan Enters., LLC*, 338 P.3d 316, 321 (Alaska 2014) ("We do not rewrite statutes even when the legislative history suggests that the legislature may have made a mistake in drafting.").

contrary legislative intent."[19] We conclude that she has not carried that burden. It is true that the legislative history of the Alaska Community Property Act is focused on the tax advantages to a surviving spouse with property in a community property trust. One of the bill's sponsors, Representative Joe Ryan, explained: "There is an income tax advantage if a person has assets with unrealized gains in community property. This bill was designed . . . to allow married Alaskans to obtain the income tax advantages available to residents of community property states and to produce business in Alaska" by allowing spouses to choose such an arrangement.[20] However, he observed that the bill would apply only to "property for which both spouses decide to take advantage" of it.[21] A sectional summary of the bill, prepared by legislative counsel, described what is now AS 34.77.030 as limiting "the classification of property as community property to what the spouses say in a community property agreement or trust, except where this chapter classifies property otherwise."[22] Describing what is now subsection .030(h), the summary stated that "appreciation and income of property transferred to a community property trust are community property *if the trust says they are*."[23]

---

[19]     *Fyfe*, 370 P.3d at 1095.

[20]     Minutes, House Judiciary Comm. hearing on H.B. 199, 20th Leg., 1st Sess. at Tape 97-61, Side A, No. 2415 (April 23, 1997) (statement of Rep. Joe Ryan).

[21]     *Id.* at Tape 97-61, Side B, Nos. 0006-0173. Representative Ryan also said that in the event of a divorce any assets in a community property trust "are split 50/50 because each partner owns half of whatever is designated as community property." *Id.* at No. 0435.

[22]     THERESA BANNISTER, LEGISLATIVE AFFAIRS AGENCY, DIVISION OF LEGAL AND RESEARCH SERVICES, MEMORANDUM ON SECTIONAL SUMMARY OF H.B. 199, THE "COMMUNITY PROPERTY" BILL at 2 (MARCH 25, 1997) (in Senate Rules Committee file).

[23]     *Id.* at 3.

Another representative was concerned that the bill could complicate divorce proceedings by "creating a collision between estate planning and family law."[24] But as the superior court pointed out in this case, "the legislature reasoned that individuals creating community property trusts were sophisticated and would seek advice to be forewarned of any complications. Thus, the legislature decided that the benefits of the Act outweighed the risks."[25]

We agree. Legislative history supports an intent that the law defer to individual Alaskans as to the content of their community property agreements while at the same time ensuring that they are aware of the ramifications.[26] A plain-language

---

[24]     Minutes, House Jud. Comm. Hearing on H.B. 199, 20th Leg., 1st Sess. at Tape 97-63, Side B, No. 0817 (April 25, 1997) (statement of Rep. Ethan Berkowitz).

[25]     One attorney testifying before the committee characterized community property trusts as "sophisticated agreements, with sophisticated planning," and observed that clients could choose whether to use them. Minutes, House Judiciary Comm. Hearing on H.B.199, 20th Leg., 1st Sess. at Tape 97-63, Side B, No. 0900 (April 25, 1997) (testimony of Richard Hompesch II); *see also* Minutes, House Judiciary Comm. Hearing on H.B. 199, 20th Leg., 1st Sess. at Tape 97-63, Side B, No. 1573 (May 7, 1997) (discussing amendment from Rep. Eric Croft to add legal disclaimer to all community property trusts now codified at AS 34.77.100(b)).

[26]     AS 34.77.100(b) requires "the following language in capital letters at the beginning of the trust":

> THE CONSEQUENCES OF THIS TRUST MAY BE VERY EXTENSIVE, INCLUDING, BUT NOT LIMITED TO, YOUR RIGHTS WITH RESPECT TO CREDITORS AND OTHER THIRD PARTIES, AND YOUR RIGHTS WITH YOUR SPOUSE BOTH DURING THE COURSE OF YOUR MARRIAGE AND AT THE TIME OF A DIVORCE. ACCORDINGLY, THIS AGREEMENT SHOULD ONLY BE SIGNED AFTER CAREFUL CONSIDERATION. IF YOU HAVE ANY QUESTIONS ABOUT THIS

(continued...)

reading of subsection .030(h) — a "presumption that appreciation and income are not covered unless declared so in the trust," as the superior court summarized it — is not inconsistent with these purposes. Therefore, because appreciation and income were not "declared in the [Phillips Revocable Trust] to be community property," the superior court did not err when it interpreted AS 34.77.030(h) to mean that the appreciation and income from the community trust properties remained John's separate property.

**B.     The Superior Court Did Not Clearly Err In Determining That The FNBA Account Was Marital Property Subject To Division.**

John contends that because the superior court found, pursuant to subsection .030(h), that appreciation and income from the rental properties in the trust did not also become community property, the court must have clearly erred when it found that the FNBA bank account *was* community property, as it held only rental income from the mobile home park and the fourplex. John emphasizes that the parties never explicitly added the FNBA account to the community trust property, although another account was in the trust.

The superior court found that the FNBA account had two listed owners: John and the mobile home park. Barbara was identified only as an authorized signer. But because the mobile home park itself was community property, the court determined that the bank account co-owned by the mobile home park was also intended to be community property; thus, the bank account was not just "income of property transferred to a community property trust" as addressed by subsection .030(h) — it was itself a

---

[26]     (...continued)
AGREEMENT, YOU SHOULD SEEK COMPETENT ADVICE.

The same prominent waiver is required in community property agreements. *See* AS 34.77.090(b).

marital asset. As evidence of this intent, the superior court contrasted the FNBA account with other accounts John opened after the couple separated, on which he identified himself as the individual owner "dba" the mobile home park and thus avoided naming the mobile home park itself as an owner. The court acknowledged that the funds in the FNBA account "may have come exclusively from rental income" from the fourplex and the mobile home park but found that this alone did not defeat the presumption that money in jointly held accounts is marital property.

In essence, John's argument to the contrary is that the funds in the FNBA account are secondary assets that can be classified only by reference to the funds' source. "Assets such as bank accounts whose characterization depends on the classification of other assets are known as secondary assets. To classify a secondary asset, a trial court must first identify and then classify the source asset from which it was derived. This process is referred to as tracing."[27] "The party seeking to establish that a secondary asset is separate property 'always bears [the] burden of proof; thus untraceable assets are marital property.' "[28] But even if that secondary asset is shown to be separate property, we recognize "a strong presumption that placing [it] into a joint account demonstrates an intent to treat the property as marital."[29]

John thus bears the burden of proving both that the money in the FNBA account began as separate property and that he did not intend to make it marital by placing it in the jointly owned account. John satisfied the first part of his burden; the funds were indisputably income from community trust property that had been John's separate property, and the parties did not declare in their trust document that the income

---

[27]    *Bilbao v. Bilbao*, 205 P.3d 311, 314 (Alaska 2009) (citations omitted).

[28]    *Id.* (alteration in original) (quoting *Schmitz*, 88 P.3d at 1128).

[29]    *Miller v. Miller*, 105 P.3d 1136, 1142 (Alaska 2005).

would be community trust property as well.[30]  But John failed to carry the second part of his burden; he did not overcome the "strong presumption" that by placing the rental income in the joint account he intended to make it marital.[31]

On appeal John makes no evidence-based argument about his intent. Rather, he contends only that this issue is controlled by the superior court's holding that appreciation and income from trust properties are not community property unless the trust document declares that they are.  But this argument does not address the "strong presumption" that arose once John directed his separate income into the joint account. Because John failed to overcome this evidentiary presumption, we are not left with a "definite and firm conviction" that the superior court made a mistake when it found that the FNBA account was marital property subject to division.[32]

**C.    The Superior Court Did Not Err Or Abuse Its Discretion When Dividing The Marital Estate.**

Barbara argues that the superior court abused its discretion when dividing the marital estate because it failed to consider the parties' unequal income levels and did not invade John's separate property, resulting in a property distribution that Barbara claims was not equitable.  Alaska Statute 25.24.160(e) controls the division of property in a community property trust upon divorce.  It provides that in distributing "community property under a community property agreement or trust under AS 34.77, unless the parties have provided in the agreement or trust for another disposition of the community property, the court shall make such disposition . . . as shall appear just and equitable after

---

[30]    *See* Section IV. A, *supra.*

[31]    *Miller*, 105 P.3d at 1142.

[32]    *Chung v. Rora Park*, 339 P.3d 351, 353 (Alaska 2014) ("Clear error 'occurs when a review of the entire record leaves us with a definite and firm conviction that a mistake has been made.").

considering all relevant factors," listing four factors.[33] Alaska Statute 25.24.160(a)(4) provides more generally that the court in a divorce action may provide "for the division between the parties of their property," including an invasion of separate property acquired prior to marriage, but "the division of property must fairly allocate the economic effect of divorce by being based on consideration of" a list of nine factors.[34]

---

[33] AS 25.24.160(e). Those factors are: "(1) the nature and extent of the community property; (2) the nature and extent of the separate property; (3) the duration of the marriage; and (4) the economic circumstances of each spouse at the time the division of property is to become effective." *Id.* John and Barbara's community trust agreement did "not provide for a specific allocation of the[ir] community property in the event of a divorce."

[34] The AS 25.24.160(a)(4) factors are:

(A) the length of the marriage and station in life of the parties during the marriage;

(B) the age and health of the parties;

(C) the earning capacity of the parties, including their educational backgrounds, training, employment skills, work experiences, length of absence from the job market, and custodial responsibilities for children during the marriage;

(D) the financial condition of the parties, including the availability and cost of health insurance;

(E) the conduct of the parties, including whether there has been unreasonable depletion of marital assets;

(F) the desirability of awarding the family home, or the right to live in it for a reasonable period of time, to the party who has primary physical custody of children;

(G) the circumstances and necessities of each party;

(H) the time and manner of acquisition of the property in question; and

(continued...)

"While the trial court need not make findings pertaining to each . . . factor, its findings must be sufficient to indicate a factual basis for the conclusion reached."[35]

Barbara acknowledges that the superior court considered the four factors listed in AS 25.24.160(e), relevant to the division of community trust property. Regarding the nature and extent of the community property (subsection (e)(1)) the court explained that John and Barbara's real estate holdings were community property, with the mobile home park producing over $70,000 in annual rental income and the fourplex producing just over $7,000. The court observed that the mobile home park and the fourplex were "immediately adjacent" to each other, that living in the fourplex allowed John to "maintain a close watch over the operation of the mobile home park," and that because the parties could no longer get along, it "would make it awkward" for Barbara to own the fourplex if John retained ownership of the mobile home park. The court also noted that John had lived in the fourplex longer than Barbara and that his advanced age would make it harder for him to adjust to new surroundings, while Barbara had been spending a lot of time with other family members in Louisiana over the past two years and was better equipped to adapt to a new environment.

Regarding the nature and extent of the separate property (subsection (e)(2)), the court concluded that the appreciation and rental income belonged to John (with the exception of the FNBA account), as explained above. Addressing the third factor, the duration of the marriage (subsection (e)(3)), the court explained the decades-long course of John and Barbara's relationship and their varied living arrangements. Finally, considering the parties' relative economic circumstances (subsection (e)(4)), the court

---

[34] (...continued)
(I) the income-producing capacity of the property and the value of the property at the time of division.

[35] *Cartee v. Cartee*, 239 P.3d 707, 713 (Alaska 2010).

again noted that John was in "poorer health" but found that the ex-spouses were similarly situated in most other respects, most notably in that both were "aged out of the labor market and dependent on rental and pension income." The court pointed out that awarding John both the fourplex and the mobile home park would provide him with substantial income for the rest of his life, roughly $100,000 per year when his other income sources were taken into account, while Barbara would receive just under $47,000 in teacher retirement income. The court ordered "a 50-50 division of the marital estate and community property," by which John received the rental properties and Barbara received an equalization payment which the court determined would allow her to purchase an income-producing property of her own.

The court clearly considered the factors relevant to the division of property in a community property trust. And although Barbara notes that the court failed to explicitly address the nine-factor test of AS 25.24.160(a)(4) for property divisions generally "except to the extent [the factors in the two provisions] overlap," she does not identify any important information that the court left out of its calculus.

Barbara instead challenges several of the court's specific factual findings, as well as its ultimate conclusion that a 50/50 split was equitable. She argues first that it was error to find that John was in "poorer health," noting her own significant health issues. The court found that John, at 87, was a two-time cancer survivor and had recently undergone heart surgery after suffering a heart attack. Barbara, though a decade younger, had diabetes and high blood pressure, needed injections for pain, was blind in one eye, and had recently suffered a serious head injury. Determining these parties' relative health was a nuanced task that could have been affected by the judge's own

observations of their physical condition at trial, a perspective we lack.[36] We are not left with a "definite and firm conviction" that the court made a mistake in its finding that John's health was "poorer" than Barbara's.[37]

Barbara also argues that the court was clearly mistaken when, in awarding the fourplex to John, it reasoned in part that he had lived there "significantly longer" than she had; John had lived there for 39 years and Barbara for 34, a difference she contends is insignificant. The context of the court's remark was that John had lived in the fourplex continuously since he purchased it in 1976 and that at the parties' respective ages it would be more disruptive for him to move than Barbara; we see no clear error in this finding, nor in the court's use of the words "significantly longer" to describe John's tenure. Relatedly, Barbara argues that the court abused its discretion when it relied on the fact that she had been spending less time at the fourplex in recent years, ignoring her testimony that this was due to John's "harassment and verbal abuse." But Barbara does not convince us that the court was required to consider her motives when it made this objective finding about how long each party had lived in the fourplex.

Finally, Barbara contends that the court was required to invade John's separate property to achieve an equitable division of property. The superior court has "broad discretion in this area" and "[a]n equal division of property is presumptively equitable."[38] Under AS 25.24.160(a)(4) the court may invade the separate property of a spouse "when the balancing of the equities between the parties requires it." A decision

---

[36]    *Cf. Sagers v. Sackinger*, 318 P.3d 860, 864 (Alaska 2014) (noting that "we give particular deference to the trial court's rulings based on the demeanor of witnesses" and affirming judge's denial of continuance after concluding that movant "was feigning the symptoms of his illness").

[37]    *See Chung*, 339 P.3d at 353.

[38]    *Brennan v. Brennan*, 425 P.3d 99, 106 (Alaska 2018) (citation omitted).

to do so, however, "may be undertaken only after the trial court has attempted to use the marital estate to balance the equities between the parties in light of the parties' reasonable needs."[39]

Barbara asserts that she "labored for 36 years to maintain and improve" the community trust properties and is therefore entitled to her share of their appreciation and rental income through invasion of John's separate property, if necessary. The superior court did not ignore Barbara's contributions to the business, specifically noting her years of managing the properties. But the court determined that her share of the marital estate, including the equalization payment, provided her enough money to live comfortably and to "easily purchase another income-producing rental property, if she still wishes to do so." Barbara does not convince us that the court failed to seriously consider her needs and other circumstances or that invading John's separate property was necessary to balance the equities. Because the court's "presumptively equitable"[40] 50/50 division of the estate was not "clearly unjust,"[41] we conclude that the superior court did not abuse its discretion.

## V. CONCLUSION

We AFFIRM the judgment of the superior court.

---

[39] *Odom v. Odom*, 141 P.3d 324, 340 (Alaska 2006).

[40] *Brennan*, 425 P.3d at 106.

[41] *Wiegers v. Richards-Wiegers*, 420 P.3d 1180, 1182 (Alaska 2018).